# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TYLER GOINGS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  22-2549** |
| **JOSEPH P. LOPINTO, III** | **DIVISION "5"** |

## ORDER AND REASONS

Before the Court is the Rule 12(b)(6) Motion to Dismiss filed by Defendant, Joseph P. Lopinto, III.  (Rec. doc. 6).  Plaintiff, Tyler Goings, opposes the motion (rec. doc. 10), and Defendant filed a reply.  (Rec. doc. 13).  Having reviewed the pleadings and the case law, the Court rules as follows.

## I.    Background

Tyler Goings initially began working for the Jefferson Parish Sheriff's Office ("JPSO") as a Deputy in or around October of 2017, and he resigned effective January 1, 2019.  (Rec. doc. 1 at p. 3).  Goings rejoined JPSO in or around April of 2019 and remained employed until he resigned effective May 6, 2021 due to alleged sexual harassment.  (*Id.*).  As of the date of his separation, he was classified as a Deputy Level 3.  (*Id.*).

Goings' Complaint alleges the following:  Goings began to suffer from a pervasive pattern of unwelcome, explicit comments, suggestions, and questioning by his supervisor, Sergeant Edward Lee Hardy, after Hardy viewed a photograph of a shirtless Goings wrestling with another male coworker from 2018.  (*Id.*).  Hardy perceived and believed Goings to be homosexual and targeted him with harassment as a result.  (*Id.*).  After obtaining a copy of the photograph, Hardy published it to other officers.  (*Id.*).  Hardy referred to Goings and the

male coworker shown in the subject photograph as "gay," "fags," "butt pirates," and "husbands." (*Id.*).  More offensive and explicit remarks followed.

Goings was to be married in October 2019, and he invited some of his co-workers to the wedding.  (*Id.*).  At the time of his wedding, Goings was assigned to the night watch but wanted to be transferred to the morning shift.  (*Id.*).  Hardy found out that a Sergeant Voorhies was invited to Goings' wedding and began to pressure Goings for an invite.  (*Id.*).  Hardy told Goings that he would get him transferred to the morning shift if he was invited to Goings' wedding.  (*Id.*).  Goings acquiesced and invited Hardy to his wedding, which resulted in additional harassment and bullying.  (*Id.*).  While at Goings' wedding, Hardy sexually harassed Goings, going so far as to grab Goings' buttocks, which was photographed.  (*Id.* at pp. 3-4).

After his wedding, Hardy micromanaged Goings and questioned his work in addition to subjecting Goings to homophobic and sexually explicit comments and text messages.  (*Id.* at p. 4).  Goings eventually approached his supervising Lieutenant to complain about Hardy's behavior.  (*Id.*).  Goings was advised that he would be punished for breaking the chain of command, which discouraged Goings from filing a complaint against Hardy.  (*Id.*).

The events ultimately escalated and in or about December 2020 to January 2021, Goings lodged an anonymous complaint to Internal Affairs of the JPSO about the sexual harassment and discrimination he received from Hardy.  (*Id.*).  Internal Affairs failed to respond to Goings' request to investigate his complaint but put out a blanket statement to all supervisors advising against sexual harassment.  (*Id.*).  Goings also repeatedly complained about the harassment to his supervisors, Captain Larry Dyess ("Capt. Dyess") and Lt.

Geautreaux.  (*Id.*).  Neither superior attempted to remedy the situation or correct the alleged conduct by Hardy.  (*Id.*).

Hardy learned of Goings' anonymous complaint and intensified his pattern of harassment and retaliation.  (*Id.*).  Hardy's retaliatory behavior was in response to Goings' protected reports and was designed to dissuade Goings, and any other deputies, from lodging further protected reports.  (*Id.*).  After being subjected to this work environment, Goings submitted his resignation.  (*Id.* at p. 5).  Goings alleges that he left due to harassment, a hostile work environment, and retaliation.  (*Id.*).

Goings further alleges that he was treated less favorably than other comparable employees that are outside of his protected class.  (*Id.*).  He maintains that Deputy Brandon Savage, a heterosexual male who was not perceived as homosexual, committed several actual violations of policy similar to those for which Goings was disciplined, without reprimand. (*Id.*).  Moreover, he alleges that Deputy Melissa Elliot, a heterosexual female, had a romantic relationship with Hardy, and ultimately received a transfer after making a report of sexual harassment and retaliation against Hardy.  (*Id.*).

On or about October 12, 2021, Goings filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  On May 9, 2022, the EEOC issued Goings a Notice of Right to Sue.

On August 7, 2022, Goings filed this lawsuit against Joseph P. Lopinto, III in his capacity as Sheriff of Jefferson Parish.  Goings seeks a declaratory judgment, equitable relief, and monetary damages to secure the protection against and to redress unlawful discrimination on the basis of gender and retaliation under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et. seq.*, as amended ("Title VII"), and the Louisiana Employment Discrimination Law codified as Louisiana Revised Statutes §§ 23:332 *et seq.* and 51:2256.

## II.      Standard of Review: Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

If a defendant perceives a plaintiff's complaint to be deficient under Rule 8(a)(2), Rule 12(b)(6) of the Federal Rules of Civil Procedure allows that party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff."  *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  *Id.* at 502-03 (citing *Iqbal*, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations omitted) (citing *Twombly*, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" thus "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

5

322 (2007)).  If the Court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56.  *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Phoenix on behalf of S.W. v. Lafourche Par. Gov't*, No. CV 19-13004, 2021 WL 184909, at \*3-4 (E.D. La. Jan. 19, 2021); *see also* Fed. R. Civ. P. 12(d).

### III.    Law and Analysis

#### A.    Prescription – Federal Claims

In Louisiana, an EEOC charge of discrimination must be filed within 300 days after the alleged unlawful employment practice. *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).  Defendant contends that Goings has not alleged any harassing or discriminatory conduct within the 300 days before his filing of the EEOC charge.   Defendant argues that Goings' claims for hostile work environment and discrimination are untimely because his EEOC charge of discrimination was filed on October 12, 2021, and Goings alleges no discriminatory or hostile behavior after December 16, 2020, the 300th day before he filed his EEOC charge.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  When a defendant moves under Rule 12(b)(6) to dismiss a plaintiff's claim, the statute of limitations may support dismissal "where it is evident from the plaintiff's pleadings that the action is barred." *Tutus v. JLG Indus.*, Civ. A. No. 4:20-cv-4231, 2021 WL 2954423, at \*4 n. 4 (S.D. Tex. June 21, 2021) (citing *Clean Energy v. Trillium Transp. Fuels, L.L.C.*, CV H-19-244,

2020 WL 7049143, at *1 (S.D. Tex. Nov. 9, 2020)), *report and recommendation adopted*, Civ. A. No. 4:20-CV-4231, 2021 WL 2954067 (S.D. Tex. July 14, 2021).   Courts have found that the issue of a statute-of-limitations bar is more appropriately resolved on summary judgment when the complaint does not conclusively establish that the claims are barred by the statute of limitations.   *HSBC Bank USA, Nat'l Ass'n for Option One Mortg. Loan Tr. 2007-HL1, Asset-Backed Certificates, Series 2007-HL1 v. TFHSP, L.L.C.*, Civ. A. No. 4:17-CV-542-ALM-CAN, 2017 WL 8727601, at *5 (E.D. Tex. Dec. 14, 2017) ("Where a statute of limitations defense raised in a motion to dismiss requires factual determinations and the evidence concerning those determinations is unclear, such an affirmative defense is properly considered at the summary judgment stage, when the parties' arguments can be considered along with competent summary judgment evidence.").

  As noted above, at the motion-to-dismiss stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff."   *UST-Mamiya, Inc. v. True Sports, Inc.*, 441 F. Supp. 3d 382, 387 (N.D. Tex. 2020) (citing *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, Civ. A. No. C-08-270, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

  While the parties make much about what constitutes a discrete act, what does not constitute a discrete act, and what constitutes a continuing violation for purposes of a sex discrimination and/or hostile work environment claim, this Court finds that it is all much ado about nothing.  Goings alleges specific allegations of harassment as late as February 2021, when Hardy forced him to stand in the cold for a vehicle inspection while allowing all

other officers to remain in their vehicles.  (Rec. doc. 1 at p. 4).  While Defendant argues that this harassment – if indeed it was harassment – must be based on sex to satisfy Goings' claims, this Court cannot state at this stage of the litigation that this "harassment" was not based on the sexual animosity that Hardy had displayed toward Goings in the past.  Goings did not resign due to harassment until May 6, 2021, consistently alleging harassment by Hardy until that date.  (*Id.* at p. 3).  October 12, 2021 is within 300 days of May 6, 2021.  This is a motion to dismiss – resolved solely on the pleadings – and not a motion for summary judgment.  Dismissal of these claims on the basis of prescription is unwarranted at this stage.

### B. Hostile Work Environment

Defendant also argues that Goings has failed to state a claim for a hostile work environment under federal and state law.  Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir.1997).[1]  Sex discrimination in this form occurs

---

[1] For purposes of a motion to dismiss, this Court does not employ the *McDonnell Douglas* framework.  *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).  "[A] plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).  A district court therefore errs by requiring "a showing of each prong of the prima facie test for [sexual harassment] at the pleading stage[.]"  *Id.*  But the Fifth Circuit has also explained that, although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the ultimate elements of a [sexual harassment] claim to make [their] case plausible."  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

"[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotations marks omitted). In same-sex sexual harassment cases, the Fifth Circuit has held that a two-step inquiry must be applied: (1) whether the alleged conduct was sex discrimination and (2) whether the alleged conduct meets the standard for a hostile work environment claim. *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 676 (5th Cir. 2021) (citing *E.E.O.C. v. Boh Brothers Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc)). The Supreme Court has noted that "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Harris*, 510 U.S. at 21 (citations and internal quotations marks omitted).

Defendant maintains that Goings cannot maintain a claim for a hostile work environment because his allegations do not reveal that Hardy was homosexual or motivated by a sexual desire towards him. This argument misses the point. In *Nguyen v. Buchart-Horn, Inc.*, this Court held "that the Supreme Court did not foreclose the possibility of same-sex harassment where the harasser is not homosexual. There is nothing in *Oncale* [*v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)] to prevent a plaintiff from claiming same-sex harassment where the harassment is motivated by hostility based on the victim's sexual orientation. '[H]arassing conduct need not be motivated by sexual desire to support an inference of

discrimination on the basis of sex.'"  No. Civ. A. 02-1998, 2003 WL 21674461, at *3 (E.D. La. July 15, 2003) (citing *Oncale*, 523 U.S. at 80).

A plaintiff may support a harassment claim with evidence of sex-stereotyping. *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 675 (5th Cir. 2021); *Cammack v. La. Dep't of Health*, No. CV 18-3614, 2018 WL 6831103, at *3 (E.D. La. Dec. 28, 2018)  ("Actionable sex discrimination under Title VII includes discrimination against those who do not conform to sex or gender stereotypes.").  Discrimination on the basis of sexual orientation, including perceived sexual orientation, is prohibited under Title VII.  *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020).  Goings explicitly alleges in his complaint that Hardy perceived and believed that he was homosexual.  (Rec. doc. 1 at p. 3).  Additionally, Goings alleges that Hardy directed language and slurs at Goings, specifically slurs and derogatory terms targeting homosexual individuals.  (*Id.*).  These terms were obviously targeted at Goings perceived sexual orientation and sex-stereotyping.  Taking these allegations as true and construed in a light most favorable to Goings, he has adequately pleaded that the basis of the harassment by Hardy was his perceived sexual orientation.

Defendant argues that Goings must pursue one of three evidentiary paths to establish sex discrimination.  Defendant maintains that a plaintiff in a same-sex sexual harassment case may establish discrimination because of sex by showing: (1) "the alleged harasser made 'explicit or implicit proposals of sexual activity' and [by] provid[ing] 'credible evidence that the harasser was homosexual;'" (2) "the harasser was 'motivated by general hostility to the presence of [members of the same sex] in the workplace;'" or (3) "'direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex

workplace.'" *Williams v. Waffle House*, No. Civ. A. 10-357-ME, 2010 WL 4512819, at *3 (M.D. La. Nov. 2, 2010) (citing *Love v. Motiva Enters. L.L.C.*, 349 F. App'x 900, 902 (5th Cir. 2009)). But this is a summary judgment "evidentiary" standard, not the standard used to decide a Rule 12 motion to dismiss at the pleadings stage. *See Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 676 (5th Cir. 2021) (citing the aforementioned evidentiary requirements at the summary judgment stage); *Love*, 349 F. App'x at 902 (same).

Defendant also argues that Goings fails to allege whether the alleged discriminatory conduct meets the standard for a hostile work environment claim.  To establish a *prima facie* case under Title VII for a hostile work environment claim based on harassment and discrimination, Goings must eventually prove five elements: (1) that he belongs to a protected class or was engaged in a protected activity; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on sex or sexual orientation; (4) that the harassment affected a 'term, condition or privilege of employment;' and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.  *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F .3d 591, 593 (5th Cir. 1995); *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986).  To determine whether a workplace constitutes a hostile work environment, courts consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Lyles v. Texas Alcohol Beverage Comm'n*, 379 F. App'x 380, 384 (5th Cir. 2010).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious), however, are not enough to establish a hostile work environment claim.

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007).  The conduct at issue must not merely be tinged with offensive sexual connotations but must actually constitute discrimination because of sex.  *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 768 F. Supp. 2d 883, 890 (E.D. La. 2011) (citing *La Day v. Catalyst Tech. Inc.*, 302 F.3d 474, 478 (5th Cir. 2002)).

Defendant maintains that Goings' allegations of harassment are vague and conclusory and cannot satisfy the pleading requirement for a hostile work environment claim.   This Court finds otherwise.   Goings sufficiently pleads that he is a member of a protected class based on Hardy's perception of his sexual orientation.  (Rec. doc. 1 at p. 3); *Bostock*, 140 S. Ct. at 1754.  The first element is thus satisfied.  As to the second element, Goings alleges he has suffered unwelcome harassment throughout his employment with Defendant.  Goings need only allege that he has suffered continuous incidents of discrimination and harassment based on Hardy's perception of his sexual orientation.  (Rec. doc. 1 at pp. 3-4).

The third element is also properly pleaded.  Goings claims that Hardy targeted his harassment and discriminatory conduct at him based on his perception and belief that Goings was homosexual.  (*Id.* at p. 3).  As noted above, this Court has held that the Supreme Court's holding in *Oncale* does not preclude a plaintiff from claiming same-sex harassment when the harassment is motivated by hostility based on the victim's sexual orientation.  *Nguyen*, 2003 WL 21674451, at *9; *see also Bostock*, 140 S. Ct. at 1754.  "Harrassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex."  *Oncale*, 523 U.S. at 80.  Hardy allegedly and consistently used specific derogatory language and slurs referring to homosexual individuals.  (Rec. doc. 1 at p. 3).  In addition to

these comments, Goings has alleged that the adverse employment actions materially affected his conditions of employment.  Goings was transferred to a less desirable shift, given falsified written reprimands, suspended and lost pay, and was denied a promotion to the vice unit. (*Id.* at pp. 4-5).  Moreover, Defendant knew of this harassment because Goings complained about it to his supervising Lieutenant, Captain Larry Dyess, Lieutenant Geautreaux, and to the Internal Affairs of the JPSO.  (*Id.* at p. 4).  None of these entities or individuals took action based on Goings' complaints.  For purposes of a motion to dismiss, the Court finds the allegations in the complaint satisfactory to support a claim for hostile work environment.

### C.    Sex Discrimination

To state a *prima face* case of sex discrimination, Goings must allege that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action by Defendant; and (4) was replaced by someone outside of his protected group or was treated less favorably than other similarly situated employees outside the protected group.  *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).  Defendant contends that Goings merely recites the aforementioned elements of a discrimination claim without alleging any specific facts that would arguably render his claim plausible on its face.  Specifically, Defendant notes that Goings vaguely refers to discrimination in his complaint without providing any details to establish that he can plausibly allege such claims, *e.g.*, ". . . Hardy began discriminating and harassing Goings. . .;" "Defendant also discriminated against Goings on the basis of his sex because he was treated differently than other similarly situated employees outside of his protected class;" and Goings "was treated more harshly, targeted, scrutinized, and/or

disciplined more severely than other similarly situated employees whom JPSO did not perceive to be homosexual."  (Rec. doc. 1 at pp. 3, 6).  Defendant maintains that the law requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 677.

This Court has already concluded that Goings is a member of a protected class.  In addition, Defendant does not appear to dispute that Goings was qualified for the promotion to the vice unit.

Defendant does dispute, however, that Goings has alleged an adverse employment action.  An "adverse employment action" under Title VII is "an employment decision that affects the terms and conditions of employment."  *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014).  "[A]dverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* at 503.  Transfers, reassignments, or a material change in job responsibilities may qualify if they are equivalent to a demotion.  *Id.* at 303-05; *Allen v. Hammond City Police Dep't*, No. CV 19-12117, 2020 WL 433359, at *3 (E.D. La. Jan. 28, 2020).   But the Fifth Circuit "has recognized that the mere 'loss of some job responsibilities' does not constitute an adverse employment action."  *Thompson*, 764 F.3d at 504 (quoting *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 269 (5th Cir. 2005)).   While Defendant maintains that the numerous reprimands issued to Goings are not adverse employment actions, "[i]t is equally well established . . . that the denial of a promotion is an actionable adverse employment action." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); s*ee also Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions,

refusals to hire, refusals to promote, and reprimands."). Goings explicitly alleges that Hardy informed him that he would not receive a promotion to the vice unit if he "ha[d] anything to do with it." (Rec. doc. 1 at p. 5). And, indeed, Goings never in fact received the promotion. That is sufficient at the motion-to-dismiss stage to plead an adverse employment action.

Goings also alleges that "[a]fter being subjected to a work environment that no reasonable person could be expected to endure, Goings submitted his resignation. Goings submits that he left due to the harassment, hostile work environment, and retaliation detailed above." (Rec. doc. 1 at p. 5). This describes a constructive discharge, which also qualifies as an adverse employment action. *Simpson v. Alcorn State Univ.*, 27 F. Supp. 3d 711, 718 (S.D. Miss. 2014) (citing *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007). Defendant contends that based on his allegations, Goings cannot establish that he was constructively discharged in order to satisfy the essential element to state a sex discrimination claim. To establish constructive discharge, Goings must allege facts demonstrating that working conditions would have been so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign. *Jurgens v. E.E.O.C.*, 903 F.2d 386, 390 (5th Cir. 1990) (quoting *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980)). To determine whether a reasonable employee would feel compelled to resign, the Fifth Circuit considers the relevancy of the following events: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement (or continued employment on terms less favorable than the

employee's former status). *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Having reviewed Goings' complaint and the facts outlined above, the Court must, at this stage of the litigation, find that he has pleaded sufficient allegations to satisfy this burden. Goings' allegations as outlined above are sufficient to plead badgering, harassment, or humiliation by Hardy calculated to encourage Goings' resignation, and further discovery may reveal just that.

Defendant also maintains that Goings has failed to allege that he was treated less favorably than other comparable employees outside of his protected class. The Fifth Circuit has considered the requirement for one employee to be similarly situated to another. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009). Employees with different supervisors, who work for different divisions of a company, or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) (considering sufficiency of evidence sustaining jury verdict). Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). This is because the courts require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (internal quotation marks omitted). The employment actions being compared will be deemed to have been taken place under

nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories.  *Lee*, 574 F.3d at 260. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.  *See id.*  If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221-22 (5th Cir. 2001).

The Fifth Circuit does not, however, interpret "nearly identical" as synonymous with "identical."  *Lee*, 574 F.3d at 260.  Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical. *Id.*  For example, it is sufficient that the ultimate decisionmaker as to the employees' continued employment is the same individual, even if the employees do not share an immediate supervisor.  *Id.*  Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable.  *Id.* The relevant perspective is that of the employer at the time of the adverse employment decision.  *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004).

Goings cites to two comparators – Deputy Brandon Savage, a heterosexual male, and Deputy Melissa Elliot, a heterosexual female.  (Rec. doc. 1 at p. 5).  Goings alleges that Savage

committed several policy violations similar to those for which Goings was disciplined, but for which Savage was never reprimanded. (*Id.*). Unlike Goings, Savage was not perceived to be a homosexual. As discovery may reveal that the violations that Savage allegedly committed were similar to those allegedly committed by Goings, and if Savage was not perceived to be a homosexual and treated as a heterosexual male, this Court cannot now state that Savage is not a valid comparator. And whether Elliott is a comparator remains to be seen after any potential discovery. Elliot, as a heterosexual female, is outside Goings' protected class and also reported sexual harassment and retaliation against Hardy. Elliot received a transfer after her claims of sexual harassment and retaliation, while Goings did not. Both Savage and Elliot were deputies, and thus, the same rank as Goings. At this stage of the litigation, the Court finds that Goings has pleaded sufficient allegations to withstand a motion to dismiss on his claim for sexual harassment.

In so ruling, the Court is mindful of the Supreme Court's admonition in *Swierkiewicz v. Sorema N.A.*,

> The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.
> . . . .
> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283, n. 11, 96 S. Ct. 2574, 49 L.Ed.2d 493 (1976). Consequently, the ordinary rules for assessing the sufficiency of a complaint apply. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

. . . .

Furthermore, imposing the Court of Appeals' heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

534 U.S. 506, 510-12 (2002). It is this Court's impression that Defendant appears to demand a pleading that delineates in particular all of the requirements of a Title VII prima facie case to prevail on a motion for summary judgment. That is simply not the standard at this stage. Having reviewed Goings' complaint, the Court finds that it puts Defendant on notice of Goings' claims and the grounds on which they rest.

### D.    Retaliation

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). The opposition clause of Section 2000e-3(a) requires the employee to demonstrate that he had at least a "reasonable belief" that the practices he opposed were unlawful. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). In *Payne*, the Fifth Circuit explicitly rejected the position that proof of an actual unlawful employment practice is necessary to state a claim for unlawful retaliation. 654 F.2d at 1137-41. An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim. *See Tureaud v. Grambling State*

*Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008); *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980); *see also Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (same); *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002) (same).  In addition, and as noted above, Goings need not establish a prima facie case of retaliation at the motion-to-dismiss stage of this litigation.  *Swierkiewicz*, 534 U.S. at 510-12.

Although "a plaintiff need not make out a prima facie case of [retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim," the prima-facie standard "has some relevance at the motion-to-dismiss stage," because in order to sufficiently state a Title VII-retaliation claim, "a plaintiff must plead sufficient facts on all of the ultimate elements to make her case plausible."  *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244, 244 (5th Cir. 2017) (quotations omitted).  The prima facie elements for a retaliation claim require a showing that "(1) [Goings] engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision."  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407–08 (5th Cir. 1999); *Broussard v. Fort Bend Indep. Sch. Dist.*, No. 4:21-CV-02359, 2022 WL 19505, at *3 (S.D. Tex. Jan. 3, 2022).

Goings alleges in his complaint that he variously lodged complaints with his supervising Lieutenant, Captain Larry Dyess, Lieutenant Geautreaux, and to Internal Affairs of the JPSO, all to no avail.  (Rec. doc. 1 at p. 4).  In *Sims v. First Bank*, the court held:

> However, in evaluating whether plaintiff has asserted a viable retaliation claim, the question is not whether the conduct of which she complained amounted to actionable sexual harassment, as defendant contends, but rather

> whether Sims could reasonably have believed that it did.  The opposition
> clause of § 2000e-3(a) does not require the employee to prove that the
> practice she opposed was in fact unlawful, but rather "requires the employee
> to demonstrate that she had at least a 'reasonable belief' that the practice she
> opposed was unlawful." *Byers*, 209 F.3d at 427-28 (citing *Payne v. McLemore's
> Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)).

478 F. Supp. 2d 911, 913 (S.D. Miss. 2006).  Regardless of whether the allegations concerning

Hardy's  actions could reasonably be found to amount to actionable sexual harassment, the

Court is not prepared to hold that Goings could not reasonably have believed that they did.

Goings lodged complaints about Hardy's alleged sexual harassment, which in and of itself, is

an unlawful employment practice under Title VII.

Goings also alleges that an adverse employment action occurred because of his

complaints.  The Supreme Court has clarified what is required at the second step of a

plaintiff's prima facie case in the retaliation context, holding that a retaliation claim may rest

on an action that "a reasonable employee would have found . . . [to be] materially adverse,

which in this context means it well might have dissuaded a reasonable worker from making

or supporting a charge of discrimination."  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473,

484 (5th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

(internal quotation marks omitted)).

Goings specifically alleges that when he approached his supervising Lieutenant,

Dyess, to complain of Hardy's behavior, Dyess advised him that he would be punished for

breaking the chain of command, ultimately discouraging Goings from filing a complaint

against Hardy.  (Rec. doc. 1 at p. 4).  Goings also alleges that after Hardy learned of his

anonymous complaint, he told Goings that he would "get rid of him" after he created a paper

trail against Goings.  (*Id.* at p. 5).  Goings also alleges that Hardy falsified a series of written

reprimands that caused Goings to be transferred to another schedule, to receive a 12-hour suspension and loss of pay, and to lose a promotion to the vice unit. (*Id.*). He maintains that Hardy's response was retaliatory behavior to Goings' protected reports and was designed to dissuade him from making any further reports. (*Id.*).

As to the third element – causation – "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). However, the but-for standard does not apply at the prima facie case stage. *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019). Instead, "[a]t the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Id.* at 243.

Accordingly, Goings may meet his burden here by pleading temporal proximity between Hardy's actions and Goings' complaints. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020). In his complaint, Goings specifically pleads that the majority of Hardy's harassment occurred after he learned of Goings' complaints to his superiors and Internal Affairs in December 2020 or January 2021. (Rec. doc. 1 at p. 4). He alleges that Hardy's behavior escalated and became more harassing after Hardy learned of Goings' complaints. (*Id.*). While Goings does not provide all dates related to certain actions by either he or Hardy, there is a prominent temporal progression in the complaint of Hardy's escalating behavior in relation to the dates of Goings' complaints. As with prescription of Goings' federal claims, the Court cannot find that the dates as provided by Goings do not establish temporal proximity to bear his burden here. For these reasons,

this Court cannot definitively state that Hardy's combined behavior was retaliation meant to dissuade Goings from making or supporting a charge of discrimination.

### E.      Prescription - La. Rev. Stat. § 51:2256

In his complaint, Goings asserts a claim under Section 51:2256 for a conspiracy to violate human rights.   Defendants argue that this claim has prescribed.   "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see Songbyrd, Inc. v. Bearsville Recs., Inc.*, 104 F.3d 773, 775 n. 3 (5th Cir. 1997).   Like discrimination claims under Louisiana's Employment Discrimination Law ("LEDL"), claims under Section 51:2256 are subject to a one-year prescriptive period.  *Cook v. Par. Of Jefferson*, – F.3d –, Civ. A. No. 21-719, 2022 WL 3369193, at *8 (E.D. La. Aug. 16, 2022).  Discrimination claims under the LEDL are suspended during the pendency of an EEOC investigation for a period of up to six months. La. Rev. Stat. § 23:303(D).  Specifically, the statute provides:

> Any cause of action provided **in this Chapter** shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La. Rev. Stat. § 23:303 (emphasis added).  The "Chapter" referred to is Chapter 3-A of Title 23, "Prohibited Discrimination in Employment."

There is some question as to whether the suspensive period also applies to causes of action under Section 51:2256, which appears in Chapter 38 of Title 51, not Chapter 3-A of

23

Title 23.  Goings argues that it does; Defendant argues that it does not.  In *Roth v. N.J. Malin & Associates*, *Inc.*, Magistrate Judge Wilkinson analyzed the text of the statute in effect at the time and its statutory history and concluded that the suspensive period in Section 23:303 did not, by its own terms, apply to a plaintiff's claim under Section 51:2256 and that the legislature, in concurrently amending both the LEDL and the Louisiana Commission on Human Rights Act, could have specified that the suspensive period in the Louisiana Employment Discrimination Act applies to causes of action under Section 51:2256, but did not do so.  No. CIV. A. 98-1793, 1998 WL 898367, at *3 (E.D. La. Dec. 21, 1998).  But Section 51:2256 has been amended since that time.  In 1998, when Judge Wilkinson considered the issue, Section 51:2256 contained no reference to the LEDL.  The 2014 amendments added several references to the LEDL.[2]

Goings essentially argues that Section 51:2256 incorporates the LEDL and that, therefore, the suspensive period applies.  He cites no case law in support of this conclusion. Defendant argues that no suspensive period applies, citing a 2020 decision from the Middle District of Louisiana in which the court applied a one-year prescriptive period to the plaintiff's claim under Section 51:2256, without analyzing whether the suspensive period in Section 23:303(D) might apply.  *Clark v. Auger Servs., Inc.*, 443 F. Supp. 3d 685, 712 (M.D. La. 2020).  The *Clark* court simply cited Judge Wilkinson's *Roth* decision without consideration of the intervening statutory amendment.

---

[2] In 2014, Section 51:2256 was amended to also apply to violations of LEDL found in "Chapter 3-A of Title 23." *See* 2014 La. Sess. Law Serv. Act 756 (S.B. 412) (West).  It is thus now clear that Section 51:2256 applies in the employment discrimination context.  *Silby v. Par. of Jefferson*, No. CV 21-662, 2022 WL 3646071, at *5 (E.D. La. Aug. 24, 2022).  Before the 2014 amendments, Section 51:2256 applied only to violations of "this Chapter," *i.e.*, Title 51 and therefore did not include Title 23.

The Court finds that although the 2014 amendments made it unlawful to conspire to retaliate against an employee for opposing a practice unlawful under the LEDL, this cannot be interpreted as incorporating all parts of the LEDL into Section 51:2256, including a prescriptive period that is not referenced. *Silby v. Par. of Jefferson*, No. CV 21-662, 2022 WL 3646071, at *7-8 (E.D. La. Aug. 24, 2022).  By its plain terms, Section 23:303(D) does not apply to claims under Section 51:2256 because such claims are not "provided in" Title 23 Chapter 3-A.  Thus, the Court finds that the one-year prescriptive period was not suspended while Goings' EEOC charge was pending.

Noting the relevant dates, the parties appear to agree that Goings' claim under Section 51:2256 was not filed within one year of his constructive discharge.  Both parties note that Goings resigned on May 6, 2021 and did not file suit until August 7, 2022.  That is well beyond the one-year prescriptive period.  Accordingly, any claim under Section 51:2256 has prescribed.

## IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted (rec. doc. 6) is **GRANTED IN PART** and **DENIED IN PART** as outlined above.  Plaintiff Tyler Goings' claim under La. Rev. Stat. § 51:2256 against Defendant Joseph Lopinto, III has prescribed, and, as such, the claim is **DISMISSED WITH PREJUDICE**.  All of the other claims remain pending in this lawsuit for now.

New Orleans, Louisiana, this __30th__ day of _____March_____, 2023.

_____
                **MICHAEL B. NORTH**
        **UNITED STATES MAGISTRATE JUDGE**